## H. P. CRAIGO et al. v. STATE.

No. A—9439. June 24, 1938.

(81 P. 2d 336.)

Goode, Dierker & Goode, of Shawnee, and Hal Johnson, of Albuquerque, N. Mex., for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, J.  H. P. Craigo and H. C. Robinson were jointly charged, tried and convicted of unlawful possession of intoxicating liquor.  Motions for new trial were made, and on October 27, 1937, overruled.  Thereupon the court, in accordance with the verdict signed by five jurors, sentenced each defendant to be committed to the county jail of Pottawatomie county for a period of 90 days and to pay a fine of $250.  To reverse the judgment they appeal.

The errors relied on question the sufficiency of the evidence to sustain the verdict, and are based on exceptions taken to rulings of the court on the admission and exclusion of testimony, also on exceptions taken to the refusal of the court to give requested instructions and on exceptions taken to certain instructions given by the court.

The offense is alleged to have been committed on the 17th day of May, 1937, when a convention was being held at the Aldridge Hotel.

The facts as shown by undisputed evidence are the Aldridge Hotel, a nine story building, located corner of Bell and Ninth streets, Shawnee, has 250 guest rooms, several business offices, and a basement in which is a barber shop, a cleaning and pressing shop, a store room and four locker rooms. One of the locker rooms being the negro change room and toilet. The lobby of the hotel is on the main floor, three elevators, two passenger and a freight elevator pass through the lobby into the basement. There is also a stairway from the lobby into the basement, and two stairways leading from the basement to the street, which do not pass through the lobby. The manager's office is in the lobby behind the clerk's desk.

Prior to February 18, 1937, the Aldridge Hotel was operated through a receivership proceeding in the district court of Pottawatomie county. The defendant Robinson had worked as an auditor for the receiver, Mr. Phillips, from February 8, 1936, to February 18, 1937, at which time the receiver was discharged and the Lutke Corporation operated the hotel until March 15th. The defendant, Robinson, remained in the hotel as auditor for the Lutke Corporation. On March 15th, the defendant, Craigo and George Lee Parent of Tulsa, leased the hotel from the Lutke Corporation, and the defendant Robinson was employed by them as manager of the hotel.

Sheriff Elixa Evans, accompanied by two deputies, went to the hotel, served a copy of a search warrant on the hotel clerk, then went down into the basement and into the locker room, used by the negro porters as a room in which to change from their uniforms into street clothes. The lockers in which the negro porters kept their clothes and personal effects while on duty had locks bought by the porters themselves. The hotel manager did not have keys to

any of these lockers. Sheriff Evans proceeded to break the locks of these lockers and found 104 pints of tax paid whisky. He arrested three negro porters. Eight days later Sheriff Evans verified the information charging the defendants Craigo and Robinson with the unlawful possession of 104 pints of whisky. On the evening of the raid at the hotel, the defendant, Craigo, accompanied by an auditor, arrived in Shawnee from Tulsa, and was in his room washing up. When informed that Sheriff Evans was raiding in the basement, he put on his clothes and went down and found the officers in the negro locker room; the defendant Craigo lived in Tulsa and came to Shawnee about twice a week and checked over the receipts of the hotel; the defendant, Robinson, at the time of the raid was the manager of the hotel and lived in the hotel with his family.

Over the defendants' objections. Exceptions reserved. Elixa Evans, sheriff, testified as follows:

"I called telephone 2805 around 6 o'clock in the evening of May 17th; it was answered. I said, 'Who is this?' He said, 'This is the bell boy at the Aldridge Hotel.' I asked him if he had any whisky; he asked me who it was. I said, 'This is Roy Youngblood.' He said, 'Yes, come on down to the basement.' I sent Dave Parsons, night jailor, to the Aldridge Hotel, where he bought a pint of whisky; I gave him a $5 bill. Dave Parsons when he went down there did not have any whisky; I saw Dave Parsons about 15 minutes later at the sheriff's office. He gave me a pint of bonded whisky; I immediately procured the search warrant and made the raid."

Motions to strike overruled. Exceptions.

Dave Parsons, over the defendants' objections, testified:

"On the night of May 17th, I went down there and bought some whisky from a colored fellow named 'Arthur Smith' in the basement of the Aldridge Hotel. He was dressed in uniform. He said he worked for the hotel; I gave him $2 for the whisky and took it to the sheriff, I went back and raided the hotel."

Motions to strike this testimony of the witness overruled.

At the close of the evidence for the state the defendants separately demurred thereto, and moved for a directed verdict of acquittal, which was overruled.

The defendant, Craigo, testified:

"I have lived in Tulsa 29 years, I operate the Densmore hotel there; Mr. Parent and I leased the Aldridge Hotel in Shawnee from the Lutke Corporation; we took possession March 15, 1937; Mr. Robinson was made local manager; I spent the first 10 or 12 days remodeling the coffee shop; prior to May 17th, I came to Shawnee every week to check the accounts; I had nothing to do with the operation or the management of the hotel or the hotel employees during that period of time or since."

The defendant H. C. Robinson testified:

"I have been connected with the hotel since December 28, 1935; I first worked for the Hotel Corporation of Oklahoma, when Mr. Phillips was appointed receiver; I worked as auditor from February 8, 1936, to February 18, 1937, when the receiver was discharged, then the Lutke Corporation operated it. I worked as auditor from February until March 15th, then Mr. Craigo and Mr. Parent took possession; I was retained as manager; on May 17th I was at the hotel in charge; the first information I had of the sheriff searching the premises was when the clerk came into the coffee shop where my wife and I were eating dinner and told me the sheriff was raiding the hotel; I went down to the locker room. The bell boys keep their uniforms there in the lockers, there are padlocks on the lockers and the hotel management do not have keys for these lockers; when I saw the whisky on the floor, it was the first information that I had that whisky was stored in these lockers, or anywhere in the hotel. From the time I took over the management on March 15th, there has not been any whisky sold or stored in the hotel to my knowledge."

At the close of all the evidence in the case, the defendants again renewed their demurrer thereto, and moved for a directed verdict of acquittal, which was overruled.

The evidence offered as tending to connect the defendants with the offense charged was entirely circumstantial. In this connection counsel for the defendants presented an instruction on the law of circumstantial evidence, and requested the court to give the same to the jury; this request was refused, and the court refused to charge on the law of circumstantial evidence.

The instruction presented and requested to be given was the approved form of the law of circumstantial evidence.

It has been uniformly held by this court that where the evidence is entirely circumstantial, it is error for the trial court to refuse to give an instruction upon the law of circumstantial evidence. Silva v. State, 11 Okla. Cr. 12, 141 P. 235; Baldwin v. State, 11 Okla. Cr. 228, 144 P. 634; Klein v. State, 26 Okla. Cr. 173, 223 P. 201; Harrell v. State, 33 Okla. Cr. 364, 244 P. 457; Moore v. State, 34 Okla. Cr. 277, 246 P. 648; Williams v. State, 38 Okla. Cr. 370, 261 P. 977.

It is true that the jury must judge of the weight of the evidence, but when evidence is introduced which only indirectly tends to raise an inference of guilt, and the importance of which must depend altogether upon circumstances, it is the right of the defendant to have the jury instructed how these circumstances bear upon the presumption of guilt.

It follows that the defendants were entitled to the instruction requested and the refusal of the court to instruct on the law of circumstantial evidence was reversible error.

It is earnestly insisted that the evidence is insufficient to support the verdict.

Counsel for the defendants in their brief say:

"From the analysis of the evidence it will be seen that the whisky was actually found in the possession of some bell boys and that it was located in a place to which hundreds of people had access, and over which defendants were not exercising any particular supervision or control except such as

might be incidental to the management and operation of the hotel. That it was quite possible for whisky to be taken into this place or removed therefrom without the manager of the hotel being aware of the conditions existing. That the whisky was seized at the time when a state convention was being held at the hotel and a large number of people were present in and around the hotel. * * * The defendants vigorously denied any knowledge of the presence of the whisky and any interest therein. This being true, we respectfully urge that the evidence did not meet the standards of proof which have been heretofore prescribed by this court in previous decisions." Citing Harrell v. State, 33 Okla. Cr. 364, 244 P. 457; Williams v. State, 38 Okla. Cr. 370, 261 P. 977; Silva v. State, 11 Okla. Cr. 12, 141 P. 235; Dorsey v. State, 44 Okla. Cr. 7, 279 P. 917.

Where the attempt is made to convict a person and to hold him criminally responsible for the acts of his employee, it must be clearly shown that such act was reasonably within the scope of the agent's employment, or was an act done within the course of the principal's business. Simpson v. State, 14 Okla. Cr. 484, 173 P. 529.

In Dyer v. State, 26 Okla. Cr. 394, 224 P. 372, it is said:

"Where peace officers seize a quantity of whisky in different containers, together with some empty vessels, hidden in a toilet room of a hotel, and in an adjacent entry room containing bags of feed, stoves, boxes, and junk, through which room hotel guests and others pass to and fro to the toilet, such seizure is not of itself sufficient proof to support a conviction of illegal possession against the owner of the hotel, who lives there with his family but was during that day and at other times before such seizure actively engaged in another business at another place."

Where the state relies for a conviction upon circumstantial evidence, the facts proven must be such as to exclude every reasonable hypothesis other than the guilt of the defendant of the offense charged in order to sustain a conviction. In our opinion the evidence in this case does not meet this requirement, and for this reason we think it would have been a proper exercise of the power vested in the trial

court to have advised an acquittal of the defendants upon the ground that the evidence was insufficient to connect them with the offense charged.

For the reasons stated, the judgment appealed from is reversed and cause remanded, with direction to dismiss.

DAVENPORT, P. J., and BAREFOOT, J. concur.